IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LEE T. FLOWER,                       §
                                     §
          Plaintiff,                 §
v.                                   §        CIVIL ACTION NO. H-07-1091
                                     §
THE PRUDENTIAL INSURANCE             §
COMPANY OF AMERICA                   §
                                     §
          Defendant.                 §

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Plaintiff's Motion for Summary Judgment (Docket Entry No. 17), Defendant's Motion for Summary Judgment (Docket Entry No. 21), and the responses filed thereto. The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Docket Entry No. 17) be **GRANTED** and Defendant's Motion for Summary Judgment (Docket Entry No. 21) be **DENIED**.

## I.  Case Background

Plaintiff Lee T. Flower ("Plaintiff") was employed by Sabic Americas, Inc. ("Sabic") for thirteen years.  At the end of his employment, he held the position of Commercial Manager.[2] Plaintiff's employment with Sabic qualified him as a beneficiary of

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Docket Entry No. 47.

[2]    Plaintiff's Original Complaint ("Complaint"), Docket Entry No. 1, p. 2; Admin. Rec., Docket Entry No. 20, p. 14.

Defendant Prudential Insurance Company of America's ("Defendant") group long-term disability policy.[3]  In 2000, Plaintiff was diagnosed with Parkinson's disease.[4]  On January 5, 2006, Plaintiff decided to file for disability.[5]  On the following day, January 6, Plaintiff's position with Sabic was terminated.[6]  Sabic cited restructuring as the reason for Plaintiff's dismissal.[7]  The actual date of Plaintiff's termination was January 31, 2006, the last day he was on the Sabic payroll.[8]

During the time leading up to January 5, 2006, co-workers and business associates noticed significant changes in Plaintiff's demeanor.  Before his Parkinson's disease had significantly progressed, Plaintiff was described as a very valuable businessman.[9]  He was noted as "one of the best in the business,"[10]

---

[3]     Complaint, Docket Entry No. 1, p. 2.

[4]     Admin. Rec., Docket Entry No. 20, p. 59.

[5]     See Complaint, Docket Entry No. 1, p. 2.

[6]     See id; accord Defendant's Original Answer, Docket Entry No. 5, p. 2.

[7]     See Plaintiff's Motion to Expedite, Docket Entry No. 8, Ex. B, p. 1.

[8]     See Complaint, Docket Entry No. 1, p. 2; accord Defendant's Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 23, p. 5.

[9]     See MacMillan Aff., Admin. Rec., Docket Entry No. 20, p. 63.

[10]     Torretti Aff., Admin. Rec., Docket Entry No. 20, p. 73.

"a real go getter,"[11] "the first with new ideas,"[12] "witty,"[13] and a "great conversationalist."[14] However, as early as 2002, Plaintiff's struggle with Parkinson's became apparent to those around him. Co-workers and associates noticed Plaintiff's tremors[15] and difficulty with writing and typing.[16] Plaintiff started having trouble walking and standing erect; his walk eventually declined into a slow shuffle.[17] Co-workers also noticed Plaintiff's constant fatigue.[18] He fell asleep during important business meetings.[19] In order to make it through the work day, it eventually became necessary for Plaintiff to move a couch into his office so that he could take periodic naps.[20] His fatigue also prevented him from making annual trips to Saudi Arabia, which were a requisite of his position.[21]

---

[11]   Crawford Aff., Admin. Rec., Docket Entry No. 20, p. 75.

[12]   Id.

[13]   Skains Aff., Admin. Rec., Docket Entry No. 20, p. 71.

[14]   Id.

[15]   See e.g., Sessions Aff., Admin. Rec., Docket Entry No. 20, p. 65; Coleman Aff., Admin. Rec., Docket Entry No. 20, p. 66.

[16]   See Bell Aff., Admin. Rec., Docket Entry No. 20, p. 67.

[17]   See e.g., id.; Coleman Aff., Admin. Rec., Docket Entry No. 20, p. 66.

[18]   See id.

[19]   See Skains Aff., Admin. Rec., Docket Entry No. 20, p. 71.

[20]   See Sessions Aff., Admin. Rec., Docket Entry No. 20, p. 65; Coleman Aff., Admin. Rec., Docket Entry No. 20, p. 66.

[21]   See e.g., MacMillan Aff., Admin. Rec., Docket Entry No. 20, p. 63; Coleman Aff., Admin. Rec., Docket Entry No. 20, p. 66.

His last trip to Saudi Arabia took place in 2003.[22]

Beyond the physical manifestations, Plaintiff's motor skills, mental capacity, and thought process visibly deteriorated.[23] Plaintiff became less coherent; he had difficulty focusing and engaging in conversations at important board meetings.[24]   One co-worker described these moments as "foggy trances."[25]   Plaintiff struggled to frame ideas and speak in a concise fashion.[26]   His speech became slow and labored[27] and he was described as becoming "irrational" and "forgetful."[28]

During this same time period, Plaintiff's treating physician, Dr. Gage Van Horn, noted the slow progression of Plaintiff's illness, including the onset of tremors and an increased difficulty in the use of Plaintiff's left side.[29]   He noted the decline of Plaintiff's handwriting and word-finding abilities.[30]   He also indicated that Plaintiff's disease caused him to suffer from

---

[22]     See Letter from Stephen Wright, Admin. Rec., Docket Entry No. 20, p. 69.

[23]     See e.g., MacMillan Aff., Admin. Rec., Docket Entry No. 20, p. 63; Skains Aff., Admin. Rec., Docket Entry No. 20, p. 71.

[24]     Id.

[25]     See MacMillan Aff., Admin. Rec., Docket Entry No. 20, p. 63; see also Sessions Aff., Admin. Rec., Docket Entry No. 20, p. 65.

[26]     See Crawford Aff., Admin. Rec., Docket Entry No. 20, p. 75.

[27]     See Jamroz Aff., Admin. Rec., Docket Entry No. 20, p. 76.

[28]     Skains Aff., Admin. Rec., Docket Entry No. 20, p. 71.

[29]     See Admin. Rec., Docket Entry No. 20, pp. 136, 140.

[30]     See id. at 136.

4

fatigue and excessive drowsiness.[31]

Approximately one week prior to Plaintiff's decision to file for disability, Plaintiff made another visit to Dr. Van Horn.  At this visit, Plaintiff informed Dr. Van Horn that he was doing about the same, but was concerned about an impairment of his balance.[32] Plaintiff was experiencing tremors, particularly when he walked.[33] Despite this, Plaintiff indicated that he was able to do all activities of daily living, still worked full time, and had no clear restrictions.[34]  Dr. Van Horn noted that Plaintiff appeared to be "holding his own."[35]

In addition to the information provided to Dr. Van Horn during Plaintiff's visit in December of 2005, Plaintiff was encountering many additional problems as a result of his disease.  During his visit on March 2, 2006, Plaintiff informed Dr. Van Horn that, prior to his termination, he had not been forthright as to the problems and limitations he was encountering due to his Parkinson's disease. Plaintiff feared that his employer would obtain his medical records and remove him from his job.[36]  He had not informed Dr. Van Horn of

---

[31]   Id.

[32]   Id.

[33]   Id.

[34]   Id.

[35]   Id.

[36]   Id. at 131-32.

the unmanageable fatigue that prompted him to move a couch into his office.[37]  During this visit, Dr. Van Horn noted that Plaintiff had significant balance difficulties and would have fallen at one point if Dr. Van Horn had not been there to catch him.[38]  Plaintiff had difficulty typing and was slow to open his left hand.[39]  Dr. Van Horn indicated in his medical notes that Plaintiff could "still do all of his activities of daily living,"[40] but later explained in a letter: "While Mr. Flowers may have been able to engage in activities of daily living he was unable to engage in full time work due to the limitations his Parkinson's causes on a daily basis."[41]

During an evaluation of Plaintiff on August 31, 2006, Dr. Van Horn indicated that Plaintiff had "become increasingly more disabled."[42]  Two of the more significant difficulties that Dr. Van Horn cited were Plaintiff's balance and walking ability.[43]  Plaintiff also informed Dr. Van Horn that he had experienced

---

[37]     Id.

[38]     Id. at 132.

[39]     Id.

[40]     Id.

[41]     See Letter from Gage Van Horn, November 28, 2006, Admin. Rec., Docket Entry No. 20, p. 82.

[42]     See Admin. Rec., Docket Entry No. 20, p. 23.

[43]     Id.

hallucinations.[44]  Despite this increased disability, Plaintiff told Dr. Van Horn that he was working at his small ranch.[45]  Plaintiff related that the corresponding physical activity  helped him deal with his disease.[46]  Dr. Van Horn noted that Plaintiff seemed to be "fairly well controlled regarding his Parkinson's disease."[47]

In a letter dated November 28, 2006, Dr. Van Horn opined that Plaintiff was disabled as of January 5, 2006.[48]  In his affidavit, he stated: "The combined effect of Mr. Flower's medical problems make it impossible for him to engage in work activity that requires sharp mental focus, high energy and the ability to travel out of the office."[49]  Dr. Van Horn found Plaintiff's reports of fatigue, mental fog, difficulty with expression, tremors, and balance problems, to be legitimate.[50]

Pursuant to Defendant's application guidelines, Plaintiff filed for long-term disability on March 15, 2006.[51]  Plaintiff's

---

[44]     Id.

[45]     Id.

[46]     Id.

[47]     Id.

[48]     See Letter from Gage Van Horn, November 28, 2006, Admin. Rec., Docket Entry No. 20, p. 83.

[49]     Van Horn Aff., Admin. Rec., Docket Entry No. 20, p. 84.

[50]     Id. at 85.

[51]     See Complaint, Docket Entry No. 1, p. 3.

application was denied on March 21, 2006.[52]  Plaintiff unsuccessfully appealed Defendant's initial and subsequent denials.[53]

During its review of Plaintiff's first appeal, Defendant referred the administrative record to neurologist Steven C. Vanna. Dr. Vanna concluded that Plaintiff had "mild to moderate functional impairments from January 6, 2006 forward."[54]  His report indicated that Plaintiff "would have some minor restrictions as of this date, including limitations on long walks, typing, and perhaps driving due to tremors and reports of 'freezing.'"[55]

To determine what constitutes the material and substantial duties of Plaintiff's occupation, Defendant referred to the Department of Labor's Dictionary of Occupational Titles. Defendant equated Plaintiff's position with that of a vice president, which requires the following: "lifting up to 10 pounds occasionally, lifting negligible weight frequently, walking and standing occasionally throughout the work day, occasional use of the upper extremities for reaching, and possible travel to meet with clients

---

[52]     See Plaintiff's Motion to Expedite, Docket Entry No. 8, pp. 2-3.  The court notes Defendant's Objection to Plaintiff's "Case Summary" as offered in Plaintiff's Motion to Expedite.  See Defendant's Objection and Response to Plaintiff's Motion to Expedite, Docket Entry. No. 11, p. 2.  The court does not rely upon Plaintiff's Case Summary in its decision.

[53]     See Defendant's Motion for Summary Judgment ("DMSJ"), Docket Entry No. 21, p. 6, 9, 10.

[54]     Report of Steven Vanna, June 21, 2006, Admin. Rec., Docket Entry No. 20, p. 124.

[55]     Id. at 123-24.

in various company sites."[56]  Defendant cited Dr. Vanna's opinion, the occupational dictionary, and Plaintiff's submitted medical records in its denial letter dated August 8, 2006.[57]

In response, Plaintiff filed a second appeal and submitted additional medical records and affidavits from co-workers, business associates, and his daughter.[58]  In addition to this new evidence, Defendant hired an investigator to conduct a three-day surveillance of Plaintiff.[59]  On the third day, the investigator observed Plaintiff drive to his ranch and mend a fence.[60]  When the investigator inquired into renting stables, Plaintiff took him on a walking tour of the premises.  During the walk, Plaintiff told the investigator that he was doing consulting work as a chemical engineer and was in the process of interviewing for a new job.[61] The investigator also noted, and the video surveillance shows, that Plaintiff walked hunched over, using very small shuffle steps.[62] Plaintiff was reported to speak "clearly" and otherwise conduct

---

[56]     DMSJ, Docket Entry No. 21, p. 7-8; see also Admin. Rec., Docket Entry No. 20, p. 210.

[57]     Letter from Meredith Formon, August 8, 2006, Admin. Rec., Docket Entry No. 20, p. 273.

[58]     Letter from Meredith Formon, March 7, 2007, Admin. Rec., Docket Entry No. 20, p. 257.

[59]     See Surveillance Report, Admin. Rec., Docket Entry No. 20, p. 33.

[60]     Id. at 38.

[61]     Id. at 38-39.

[62]     Id. at 38.

himself normally.[63]

The investigator's report and the additional materials submitted by Plaintiff were added to Plaintiff's file and forwarded to Dr. Vanna for a second review.[64]  In his review, Dr. Vanna opined that Plaintiff's illness was still mild to moderate.[65]  He indicated that Plaintiff's actions, as observed by the investigator, are inconsistent with his alleged fatigue and functional difficulties.[66]  He also noted that Dr. Van Horn had not significantly altered or increased Plaintiff's medication since Plaintiff became forthright with his symptoms.[67]  Dr. Vanna again concluded that Plaintiff was not disabled as of January 5, 2006.[68]

Plaintiff, having exhausted his direct appeals to Defendant, commenced the present suit on April 2, 2007, alleging wrongful denial of his long-term disability claim and breach of fiduciary duty in violation of the Employee Retirement Income Security Act ("ERISA").[69]  In July of 2007, this court dismissed Plaintiff's

---

[63]     Id.

[64]     Report of Steven Vanna, February 20, 2007, Admin. Rec., Docket Entry No. 20, p. 14.

[65]     Id. at 15.

[66]     Id.

[67]     Id. at 16.

[68]     Id.

[69]     29 U.S.C. §1001, et seq.  See Complaint, Docket Entry No. 1, p. 1.

breach of fiduciary duty claim.[70]  On July 11, 2007, Plaintiff filed a motion for summary judgment on the allegedly wrongful denial of his short term and long term disability benefits.[71]  Defendant filed a motion for summary judgment on July 20, 2007, contending that its denial of Plaintiff's benefits claim was proper because Plaintiff was able to perform the material and substantial duties of his occupation on January 5, 2006.[72]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at

---

[70]    See Memorandum and Recommendation, Docket Entry No. 22, p. 1; Order Adopting, Docket Entry No. 24.

[71]    See Plaintiff's Motion for Summary Judgment, Docket Entry No. 17, p. 1.

[72]    See DMSJ, Docket Entry No. 21, p. 1.

250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. <u>Celotex Corp.</u>, 477 U.S. at 322.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

The nonmoving party must show more than "some metaphysical doubt as to the material facts." <u>Meinecke v. H & R Block</u>, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. <u>Brown</u>, 337

12

F.3d at 541; <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp.</u>, 477 U.S. at 322.

### III. Analysis

The long-term disability policy at issue in this case is subject to the authority of ERISA.  ERISA furnishes district courts with jurisdiction to review determinations made by employee benefits plans, including disability insurance plans.  <u>See</u> 29 U.S.C. § 1132(a)(1)(B); <u>Baker v. Metro. Life Ins. Co.</u>, 364 F.3d 624, 629 (5th Cir. 2004).  When the plan fiduciary is vested with the discretionary authority to determine disability claims under the plan, a district court may reverse the decision regarding a denial of benefits only for an abuse of discretion that yields an arbitrary and capricious decision.  <u>See Robinson v. Aetna Life Ins. Co.</u>, 443 F.3d 389, 395 (5th Cir. 2006).  "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence."  <u>Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.</u>, 168 F.3d 211, 215 (5th Cir. 1999)(internal quotations omitted).

A fiduciary's decision must be affirmed if it is supported by substantial evidence.  <u>Id.</u>  "Substantial evidence is more than a

13

scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Ellis v. Liberty Life Assurance Co., 394 F.3d 262, 273 (5th Cir. 2004). The Fifth Circuit instructs that the court's review of an administrator's decision must assure that the decision "fall[s] somewhere on a continuum of reasonableness–even if on the low end." Vega v. Nat'l Life Ins. Serv., Inc., 188 F.3d 287, 297 (5th Cir. 1999)(en banc).

In instances where the benefit plan gives discretion to a fiduciary who is operating under a conflict of interest "that conflict must be weighed as a factor in determining whether there is an abuse of discretion." Estate of Bratton v. National Union Fire Ins. Co., 215 F.3d 516, 521 (5th Cir. 2000). The Fifth Circuit applies a "sliding scale standard" in those cases where, as here, the administrator is self-interested because it is also the insurer.[73] Vega, 188 F.3d at 295-97. However, a plaintiff must point to more evidence of a conflict than merely a dual role to justify any significant reduction in deference given to the administrator's decision. See Ellis, 394 F.3d at 270 n.18. Because Plaintiff has failed to present any evidence suggesting that a conflict existed that affected Defendant's decision-making in this case, the court reviews the decision with only "a modicum less deference" than it would otherwise employ. See Vega, 188 F.3d

---

[73]   See DMSJ, Docket Entry No. 21, p. 2.

14

at 301.

In this case, Plaintiff contends that summary judgment in his favor is appropriate because Defendant's decision in denying his benefits was arbitrary and capricious.  He contends that: (1) Defendant did not review all of the evidence submitted pertaining to Plaintiff's eligibility, (2) Defendant based its denial on a wrongful determination that Plaintiff filed his application after the date he stopped working, (3) Sabic provided incorrect information to Defendant as to Plaintiff's physical difficulties and ability to travel, (4) Plaintiff was disabled according to the provisions in his benefits plan as demonstrated by Plaintiff's medical records and affidavits of his treating physician, co-workers, business associates, and his daughter, (5) the analysis by Defendant's own physician supports a finding that Plaintiff was unable to carry out the material duties of his occupation, and (6) Defendant failed to meet the plan communication requirements set imposed by ERISA.  In a cross-motion for summary judgment, Defendant asserts that it did not abuse its discretion in denying Plaintiff's claim for disability benefits because concrete evidence supports Plaintiff's ability to do his job.

The court can, without difficulty, dispense with four of Plaintiff's contentions.  First, Plaintiff contends that Defendant did not take the time to review all of the evidence submitted prior to the initial denial of Plaintiff's claim.  In his motion,

15

Plaintiff specifically refers to a physician form that Defendant had not received prior to its initial denial letter in March of 2006. This argument is now irrelevant. Plaintiff filed two appeals subsequent to Defendant's initial denial. The administrative record submitted by Defendant includes all physician forms, notes, and letters that Defendant refers to in his motion for summary judgment.[74] It also includes all of the affidavits from Plaintiff's co-workers, business associates, physician, and daughter. Moreover, in subsequent denial letters dated August 8, 2006, and March 7, 2007, Defendant specifically referred to the evidence considered in making its decision.[75] This evidence included the updated medical information and affidavits submitted by Plaintiff.

Second, Plaintiff claims that Defendant wrongfully based its denial of benefits on the allegedly late filing of Plaintiff's application. However, during the course of Defendant's appeals, Sabic corrected the date of Plaintiff's actual termination from January 6, 2005, to January 31, 2006,[76] and Defendant no longer

---

[74]    In assessing factual questions, the Fifth Circuit instructs that the district court is constrained to the evidence in the administrative record. Vega, 188 F.3d 299. As the plan administrator, Defendant has the obligation to identify the administrative record and then the claimant may contest the completeness of said record. Id. Accordingly, the court confines its assessment to the evidence present in the administrative record as submitted by Defendant.

[75]    See Letter from Meredith Formon, March 7, 2007, Admin. Rec., Docket Entry No. 20, p. 255; Letter from Meredith Formon, August 8, 2006, Admin. Rec., Docket Entry No. 20, p. 270-72.

[76]    See Defendant's Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 23, p. 5.

cited the timing of Plaintiff's application as a consideration in the subsequent denials.  Moreover, in its own motion for summary judgment, Defendant did not cite application timing as a factor in its decision to deny Plaintiff's appeals.

Third, Plaintiff contends that Sabic provided incorrect information to Defendant regarding Plaintiff's physical difficulties and ability to travel.  Specifically, Plaintiff claims that Defendant based its denial, in part, on a statement by Sabic employee Sonya Dartes Brown indicating that Plaintiff had recently traveled to Saudi Arabia on business.  Again, Plaintiff is offering an argument that is no longer pertinent to the issues before the court.  In a letter from Sabic's general counsel, Steven Wright, Sabic corrected the information provided by Ms. Brown by stating that the last time Plaintiff traveled to Saudi Arabia was in October of 2003.[77]  This documentation is included in the administrative record and was referred to in denial letters sent to Plaintiff.[78]

Fourth, Plaintiff asserts that Defendant failed to meet the plan communication requirements imposed by ERISA.[79]  ERISA requires

---

[77]     Letter from Stephen R. Wright, Admin. Rec., Docket Entry No. 20, p. 69.

[78]     See Letter from Meredith Formon, March 7, 2007, Admin. Rec., Docket Entry No. 20, p. 257.

[79]     Defendant argues that the assertion that it failed to provide a summary plan description is improper because Sabic, not Defendant, is the plan administrator.  This argument is wholly misplaced.  In its own motion for summary judgment, Defendant states: "The Plan is insured and administered by Prudential."

17

benefits plan participants be provided with an "accurate, comprehensive, easy to understand summary of the plan." <u>Hansen v. Continental Ins. Co.</u>, 940 F.2d 971, 980 (5th Cir. 1991). "The summary plan description . . . shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1).

The court fails to see an abuse of discretion in the communication of a summary plan. Plaintiff provides no indication as to what provision(s) of the plan he finds inaccurate or incomprehensive. He only asserts that it "took quite a bit of time" to complete the application, which caused his physician's forms to be delayed until mid-March (presumably March of 2006). Even if confusing language was the cause of the delay, these forms were in the hands of Defendant for the consideration of the two appeals, and in each denial letter, Defendant reminded Plaintiff of his rights and the proper procedures for further action. Accordingly, the court does not find Plaintiff's claim as to poor communication to be persuasive.

This brings the court to the crux of the parties' dispute: whether Defendant abused its discretion in denying Plaintiff's disability benefits based upon the evidence in the administrative

---

DMSJ, Docket Entry No. 21, p. 2.

record.  Both parties are asserting, in their respective motions for summary judgment, that there is no genuine issue of material fact.  The facts are undisputed.  Plaintiff contends that his medical records and the affidavits of Dr. Van Horn, co-workers, business associates, and Plaintiff's daughter unequivocally show that Plaintiff was disabled according to the provisions of the Prudential benefits plan as of January 5, 2006.  Defendant contends that the same evidence reasonably supports its determination that Plaintiff was able to perform the material and substantial duties of his regular occupation; therefore, Defendant did not abuse its discretion in denying Plaintiff's disability claim.

The court looks first to the language of the benefit plan. See Baker, 364 F.3d at 628.  The pertinent plan language provides as follows:

> You are disabled when Prudential determines that:
>
>> You are unable to perform the ***material and substantial duties*** of your ***regular occupation*** due to your ***sickness*** or ***injury*** . . . .
>
>> . . .
>
> ***Material and substantial duties*** means duties that:
>
>> Are normally required for the performance of your regular occupation; and
>
>> Cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

19

> *Regular occupation* means the occupation you are routinely
> performing when your disability begins.  Prudential will
> look at your occupation as it is normally performed
> instead of how the work tasks are performed for a
> specific employer at a specific location.[80]

After reviewing Sabic's written description of Plaintiff's position, and the Department of Labor's reference materials, Defendant determined that the material and substantial duties of Plaintiff's position involve: "the direction and coordination of multiple departments, . . . lifting up to 10 pounds occasionally, lifting negligible weight frequently, walking and standing occasionally throughout the work day, occasional use of the upper extremities for reaching, and possible travel to meet with clients in various company sites."[81]

Plaintiff was diagnosed with Parkinson's disease in 2000. Since then, co-workers and business contacts have witnessed Plaintiff's mental and physical decline.  Four different co-workers and four different business associates submitted affidavits describing Plaintiff's difficulty in performing his occupational duties.  They note Plaintiff's tremors and constant fatigue.  They outline the challenges Plaintiff faces in writing, typing, walking, and standing erect at work.  Plaintiff's fatigue has caused him to fall asleep during important business meetings.  In order to make it through the work day, Plaintiff had to move a couch into his

---

[80]    DMSJ, Docket Entry No. 21., p. 15-16.

[81]    Id. at 8.

office so he could take periodic naps.  He had not traveled to Saudi Arabia, which was a requisite of his position, since 2003. Moreover, co-workers and business associates note that Plaintiff became significantly less coherent; he struggled with words and framing ideas.  He began having difficulty focusing and conversing in important board meetings.  He was described as frequently entering into "foggy trances" at work.

Plaintiff's treating physician also documented his struggles with his disease in the year prior to Plaintiff's filing for disability.  Dr. Van Horn noted Plaintiff's fatigue, tremors, difficulty using his left side, trouble with balance, deteriorating handwriting and word-finding ability, and excessive drowsiness. After Plaintiff was terminated and no longer feared his employer would learn of the inhibiting factors of his disease, he disclosed the true extent of his disease's effects prior to January 5, 2006, particularly the unmanageable fatigue.

During Plaintiff's visits to Dr. Van Horn after January 2006, Dr. Van Horn noted that Plaintiff had "become increasingly more disabled."  Plaintiff had significant balance and walking difficulties, difficulty typing and opening his left hand, and had experienced hallucinations.  Dr. Van Horn noted that, even though Plaintiff may be able to engage in the activities of daily living, "he [is] unable to engage in full-time work due to the limitations his Parkinson's causes on a daily basis."  Dr. Van Horn's recent

reports indicate that Plaintiff has not been able to engage in any type of work activity since January 5, 2006.

A fiduciary's decision regarding disability must be affirmed if it is supported by substantial evidence. <u>Meditrust</u>, 168 F.3d at 215.  The Fifth Circuit describes substantial evidence as "more than a scintilla, less then a preponderance," and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Ellis</u>, 394 F.3d at 273.  In light of the facts in this case, Defendant's decision to deny Plaintiff's benefits was not supported by substantial evidence.  The only reasonable conclusion is that Plaintiff was disabled as of January 5, 2006.

In addition to physician statements, there are affidavits from eight individuals indicating that Plaintiff could not perform the material and substantial duties of his position at Sabic.  These affidavits include people who observed Plaintiff doing his job on a daily basis.  They note his difficulty walking and standing, the lack of full use of his left side, and his inability to travel overseas.  His mental decline surely suggests he was having trouble carrying out any managerial aspects of his position.

Defendant based its denial of Plaintiff's application for benefits primarily on: (1) the opinions of Dr. Vanna, (2) observation conducted by an investigator, (3) Dr. Van Horn's indication that Plaintiff was "holding his own" on December 29, 2005, and (4) Plaintiff's activities on his ranch.  However, these

22

arguments are outweighed by all of the evidence laid out above.

To demonstrate, Dr. Vanna represents the sole opinion that Plaintiff was not disabled on January 5, 2006.  Eight affidavits were submitted by individuals with firsthand knowledge of Plaintiff's ability to perform his duties at work.  Furthermore, there is no evidence in the administrative record from co-workers or associates indicating Plaintiff was able to do his job in January of 2006.

The "three-day" observation of Plaintiff's activities was in actuality very minimal.  Surveillance was terminated early the first two days because Plaintiff either remained in his house the majority of the day or left the house for an extended period.  The investigator's report included only one full day of surveillance where Plaintiff was observed mending a fence and walking about his ranch property.  The court does not find this limited evidence very instructive as to Plaintiff's ability to perform the duties of a Commercial Manager.  Moreover, the video surveillance shows Plaintiff's slow, shuffle walk and lack of the use of his left side.

Defendant seems to rely heavily on Plaintiff's ranch activities and his attempts to obtain future employment despite having no detail as what any of these current or future professional endeavors may entail.  Plaintiff owns a ranch as a second property.  The investigator reported seeing Plaintiff mend

a fence on his property, but included no description of the simplicity or complexity of the task.   The investigator did not provide evidence of the extent of Plaintiff's involvement in the day-to-day management of the ranch.   There is no evidence as to any corresponding tasks, physical challenges, work hours, or necessary mental capacity.

Regarding his attempts to obtain employment, Plaintiff stated that he has interviewed with numerous companies, hoping to get back into the workforce in some capacity.[82]   However, Plaintiff has not been hired and, again, there is no evidence of the corresponding tasks, physical challenges, work hours, or mental capacity necessary for any position to which Plaintiff may have applied. There is no indication that the employment sought by Plaintiff would involve any of the material or substantial duties of Plaintiff's Commercial Manager position at Sabic.   The court does not find evidence of Plaintiff's mere attempts at a new occupation to be substantial for purposes of determining Defendant's abuse of discretion.

The court finds that the administrative record does not adequately support Defendant's decision to deny Plaintiff's application for short term and long term benefits.   See Vega, 188 F.3d at 287.   Defendant's finding that Plaintiff was able to carry

---

[82]    See Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 27, p. 2.

out the material and substantial duties of his occupation despite the difficulties caused by Parkinson's disease is not supported by substantial evidence.  Accordingly, the court finds that Defendant abused its discretion.

Plaintiff is entitled to recover damages in the form of his disability benefits.  Plaintiff is entitled to receive a lump sum payment of back benefits from the date of this opinion.  The parties dispute the amount of Plaintiff's benefits.  The court will refrain from making a recommendation as to the amount of Plaintiff's benefits until a hearing is held to determine such, as well as to consider any offsets to which Defendant may be entitled.

### IV.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Docket Entry No. 17) be **GRANTED** and Defendant's Motion for Summary Judgment (Docket Entry No. 21) be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have ten days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the

United States District Clerk, either electronically or by mail to P.O. Box 61010, Houston, Texas, 77208.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

   **SIGNED** in Houston, Texas, this 29th day of November 2007.


                                        Nancy K. Johnson
                                  United States Magistrate Judge